May it please the Court, I would like to highlight three critical errors in the Trade Court's decision and ask the Court to reverse that decision and remand with instructions to dismiss. First and most fundamentally, the Court merged two entirely distinct systems for seeking review of anti-dumping and countervailing duty orders. Congress could not have been clearer and more thorough when it enacted the NAFTA implementing legislation in making it clear that the normal injunction in the Court of International Trade pursuant to Section 1516 AC2 could not be used in this type of proceeding, that suspension of liquidation in a NAFTA panel proceeding could only apply to administrative reviews, not to challenges to the original investigation. And there was reason for this, because the NAFTA panels and before them the CFTA panels were unique and unprecedented and there was great concern among all of them. Let me ask you a hypothetical. The same case that we have here with one difference, instead of the NAFTA panel saying that there was not sufficient evidence to show injury to the domestic industry, suppose the NAFTA panel had said that there was no dumping or no subsidy, would the government's position be the same? Yes, it would, Your Honor, because in the NAFTA implementing legislation, Congress only provided for suspension of liquidation for administrative reviews. And Congress was aware of this Court's decision in the Soco Flores, but if you look, for example, at the Joint Appendix at page 311, it's Congress speaking when enacting NAFTA three years later and saying we're being very specific here. Let me tell you what bothers me about the government's case. I want to be quite candid and see what you have to say in response to it. As a result of all of these proceedings, it's now been determined that there was no illegal dumping. And let me use dumping to cover also subsidization. There's been no illegal dumping. And yet the government says despite the fact that there's no illegal dumping, the duties you deposited on the theory that maybe there was illegal dumping should not be returned. And it strikes me as a somewhat bizarre result because what in effect you seem to be saying that is as between the government and the people who pay these duties that have now been held not to be illegal, the government has a better right to the money. And I don't understand why that should be so unless there was some clear evidence that Congress intended this, what seems to me to be a somewhat bizarre result in the case. Let me answer that two ways, Judge Friedman. First, the question is fidelity to the statutory scheme that Congress enacted. And Congress could not have been clearer that there would be no continuation of suspension of liquidation in this type of circumstance. And the Canadian parties do not dispute that. Second, if the Canadian parties were to obtain the relief that they're seeking here, they would be in a much better position than a party who had gone to the Court of International Trade in the first place, because they would have obtained... Based on what you said, I don't want to interrupt your train of thought, but then there is no way in which the government or anyone could appeal from the NAFTA decision. No, that's not correct. I was just going to get to that. There are two ways to appeal. NAFTA recognizes that even though the panel decisions are legally binding, the parties agree they would be legally binding, but that doesn't mean that the decisions are enforceable. It may in the... Certainly not in the domestic courts. Congress was very clear about that. But there are two sections of NAFTA, Section 1904 and Section 1905. And Section 1905 is particularly relevant here. It is summarized on pages 643 and 647 of the Joint Appendix. Section 1905 of NAFTA allows a party, if it feels that another party has not complied with or enforced a NAFTA panel decision, to seek a special committee to review compliance, to see whether the party has complied. And if it hasn't, then... What is a special committee? Is this part of NAFTA? Yes, it's part of NAFTA. Because NAFTA... The parties, the sovereigns who entered into NAFTA recognized that while they would submit their agency decisions for binational panel review, there might be situations... They could not. I mean, there were constitutional concerns under the Appointments Clause with allowing citizens of a foreign country to issue injunctive relief. What would happen... I'm going to give you a bizarre case, but I want to see how you deal with it. After NAFTA panels had finally decided this thing, Congress said that NAFTA didn't know what it was doing in this case. It was just crazy. It was just wrong. So we're not going to follow the NAFTA decision. What rights do the Canadians then have? How do they challenge that? They have two rights. One is under Section 1904 of the NAFTA. They can request what's called an Extraordinary Challenge Committee. But NAFTA decided in their favor. It would be up to the government to challenge the NAFTA decision. Well, then the United... Well, but if their complaint is that the United States did not comply with the NAFTA panel decision, which they did, they can seek a special review by a special committee of retired judges. Justice Sandra Day O'Connor is one of the United States. Would they challenge that decision anywhere in court? No, not in court. And that's what's so important, because Congress expressly provided that no court, no domestic court, can enforce or review a NAFTA panel decision. It's an entirely separate trust. In this case, they're not seeking to review the NAFTA panel decision. They couldn't seek to review the NAFTA panel decision, because they would. What they're claiming is that the way in which Congress has implemented that decision is not proper. Right. They're claiming that Congress has not complied with the NAFTA panel decision. And that specific allegation can be raised before a NAFTA Special Challenge Committee under Section 1905 of NAFTA. And if that panel decision, let's say the panel, as two panels have recently decided not to comply, it was the United States government that decided not to comply. Right. But let's say saying that NAFTA, that the party that prevailed in NAFTA can go back to NAFTA and say the United States government isn't paying any attention to you, have them shape up. Right. That's correct. They can go to a special committee. You're saying that NAFTA can overrule a decision of the United States government. The decision is to ignore what NAFTA does. No, this is really important. And this is why the Court of International Trade lending its injunctive powers to the panels, which Congress clearly intended not to have any equitable relief. That's why it was so improper. Because when you go to one of these special committees, if they conclude that the party that lost is not complying, it can order relief, but it can't order compliance. It cannot order Canada or Mexico or the United States that it absolutely must comply with a NAFTA panel decision. It can order compensation or it can approve retaliation. And this is very similar to the WTO. It sounds to me from what you're saying that people are ill-advised to go to the NAFTA panels. Not necessarily. They don't have the same rights that they would have if they went to the Court of International Trade. There are advantages and disadvantages to both, just as with any concurrent system. If they go to a NAFTA panel, in theory, they get a faster decision. They certainly get a decision made by lay experts, including citizens of their own country, who get to review their decision. And in this case, what the Court of International Trade did was, without reviewing a decision made by laypersons, to give it binding, injunctive, equitable effect in the United States, which is absolutely what Congress did not intend, and what the constitutional concerns were about under the Appointments Clause. I'm not so sure that that's the correct statement of congressional intention. It looks from the record and from what we know of NAFTA that the intention was that for certain kinds of disputes, NAFTA would be the deciding, and if NAFTA were asked and agreed by the parties, to be the deciding entity, that would end the dispute. You're saying that NAFTA must yield to... To the sovereigns, yes. The sovereigns did not relinquish, none of the sovereigns relinquished absolute control. It's not the fact that it was a treaty, it was ideally ratified. It's not a treaty, Your Honor. It's an executive agreement. Let's hear from the other side. Good morning. May it please the Court, our submission is simple. Anti-dumping and countervailing duties can be collected only under a valid duty order supported by valid determinations of injury to domestic industry and valid determinations of dumping or subsidization. In this case, it's been conclusively determined that there was no injury to U.S. industry and that there was never any legal basis for duties. But the government says it was not conclusive. It's not conclusive unless it goes through the United States system. Let me respond to that, Judge Newman, and I think that goes to the argument that the government was making, that this is an attempt to enforce a NAFTA panel decision. That's not the case. We are not seeking to enforce NAFTA here. We are seeking to enforce U.S. law. Under U.S. law, once there's a final negative injury determination, commerce is required to instruct customs to terminate suspension of liquidation and to liquidate all entries without duties. And that's because there is no legal basis to collect duties when there has been no injury to U.S. industry, as I think Judge Friedman was saying. So, there is no issue of enforcing NAFTA here. This is simply an issue of enforcing U.S. law. And that starts to sound to me as extreme a position as one might have said the government was taking. If that NAFTA ruling is not final and binding in accordance with the rules and regulations that apply to NAFTA, which the United States has adopted, then where are we in this case? I believe it is final and binding, Judge Newman, pursuant to the NAFTA Implementation Act, which is binding. And in fact, in this case, the ITC took precisely the action that the NAFTA Implementation Act directs it to take. On remand from the NAFTA panel, it found that there was no injury to U.S. industry. When you say that it's binding, that doesn't really get very far because the question is, it's binding, but suppose the American government says, yes, it's binding, but we're not going to pay any attention to it. The real question is, if it's binding, how does one enforce it? Isn't that the real question here? We've got some money, these duties, anti-dumping duties that have been paid, and the question is, who gets the money? And NAFTA seems to say, the Canadians get it, and the government says, no, we'll keep it up to a certain point, and then the question is, how does one get that money, which NAFTA has finally decided you're entitled to and not the government? Your Honor, I think NAFTA is relevant here only because it was implemented through the NAFTA Implementation Act. The NAFTA Implementation Act is U.S. law, and we are seeking to have the Department of Commerce comply with U.S. law, and I think that becomes very clear, and I would urge this Court to take a look at the Statement of Administrative Action for the FTA, which also applies to NAFTA, and the relevant passage of which appears on pages 232 to 233 of our Joint Appendix. That explains precisely what Congress was doing when it enacted the FTA Implementation Act, and when it enacted the statutory provisions on which the United States relies, and the Statement of Administrative Action says we are required to amend our statutes to provide that parties who go to NAFTA panels will receive refunds of cash deposits on the same terms as parties who go to the CIT, and we are going to insert these provisions, G5B and G5C, into the statute in order to ensure that result. Now, the United States apparently takes the responsibility of complying with its obligations as it said it was doing under the Statement of Administrative Action. The United States was actually trying to breach those obligations. That can't be correct. The other thing that the United States that can't, says that can't be correct, is that NAFTA was designed to give us a choice. Either we are able to choose to have two or three Canadian panel members on the NAFTA panel, or we are entitled to get a complete refund of all cash deposits paid pursuant to an invalidated order. Now, that choice is implausible on its own, but the fact is that there is no choice at all, because any interested party who proceeds from a NAFTA panel is entitled to get a refund of all cash deposits paid. Now, the review of that proceeding is before a NAFTA panel, and were the United States correct, that's what would always happen, because domestic producers, of course, always have an interest in ensuring that their competitors pay duties. The United States' arguments also don't make sense in the context of the Tariff Act as a whole. The United States says that it doesn't matter that liquidation of the Canadian Wheat Board's entries was suspended when the ADCBD orders were revoked. They're still entitled to liquidate those entries according to the invalidated, revoked order. But the purpose of suspension, which is mandated by statute, is to ensure that entries are not liquidated until it's been determined, according to law, what the proper correct amount of duties, if any, is. And in fact, this Court made that point in its recent decision in Diamond Saw Blades from last month, when it said, when cash deposits are collected pursuant to an anti-dumping duty order, with respect to which liquidation has been suspended, and the anti-dumping duty order is invalidated, the deposits are returned with interest. That's exactly what should have happened here, but didn't. On the United States' view, the suspension of liquidation in this case seems to have had no purpose at all, or at a minimum, it serves only to give importers the benefit of the rate determined in the administrative review, but not to give them the benefit of the total invalidation of the order. So if the duty margin is reduced from 15 percent to 10 percent through an administrative review, as I understand the government's position, suspension gives the importer the benefit of that. But if the duty order is invalidated completely, such that there was never any legal basis for duties in the first place, suspension does not give the importer the benefit of that. And I submit that that makes no sense. And in fact, the United States doesn't really even attempt to argue that any of this makes sense. It claims that the Court should ignore the absurdities that result from its interpretation because they're mandated by the plain text of the statute. But in fact, they're not. And I think the best way to understand the way the statute works is to look at the SAA's explanation of why Congress wrote it the way it did. In 1988, when the FTA Implementation Act was included in the statute, the way in which CIT review worked was fairly clear. When appeals were taken to the CIT and liquidation of entries was suspended pending that appeal, it was, although the United States has occasionally argued otherwise, it was well accepted that importers got the benefit of the final court decision as to all entries whose liquidation was suspended. That's what this court recently said in Diamond Sawblades, and that's what it said in the original order. There can't be any valid determination in a later administrative review. There has to be a valid order. There were two ways to prevent liquidation during CIT review. One was the mandatory suspension pursuant to statute that begins when commerce issues a until the administrative review is completed or until the time to request an administrative review expires. The other way is that the CIT can enjoin liquidation pending appeal, and that achieves the same result. It's essentially a court order mandating suspension of liquidation. But that's not really the issue here. The issue is that I gather that duties are no longer being levied, and after the NAFTA decision, no further adder dumping duties were levied on Canadian wheat. Is that right? The issue here, Judge Newman, is whether the United States is entitled to collect duties on entries that have not yet been liquidated. Or to retain the duties that had already been collected. Or is there a difference between these? I thought it was only the retention of what had already been collected. Let me try to explain that, because I do think that's important. The United States has framed this as our seeking retroactive review. That's actually not an apt term. We are not asking that commerce go back and reliquidate entries that have already been liquidated. Entries that have already had duty finally assessed and collected. That's not an issue. It's the unliquidated entries. Correct. Correct. And our position is simply that entries whose liquidation was suspended, entries that haven't yet had the final duty assessed on them, should have duties assessed in accordance with the law as it's now determined to be, which is that there is no legal basis for duties. These adder dumping duties, as I understand it, are merely deposited. Is that right? That's correct. That's absolutely correct. We're waiting to see what's going to happen. They'll either be liquidated or they'll be returned. That's absolutely correct. And our submission is that because there is no legal basis for duties here, these estimated deposits that served as security have to be returned. And I think G5B and G5C support that. G5B, as is explained in the SAA, was enacted specifically to mimic the system for judicial review by the CIT, which appears in 1516A C1. Like C1, G5B sets out a general rule that if entries are liquidated during the pendency of panel review, they're liquidated in accordance with the determination of the agency that's under review. And that makes sense because, as this Court said in Timken, agency determinations are presumptively correct until they're invalidated. So if entries are liquidated while an agency determination is in effect, they're liquidated in accordance with that determination. But like C1, G5B applies, as the CIT has now twice found, only to entries that are suspended. And G5C confirms that. In G5C, as the United States pointed out, Congress picked two types of appeals in which one could obtain continued suspension. Appeals of administrative review determinations and scope determinations. That was not random. The United States doesn't have an explanation for that, but the SAA does. Those were the two situations in which one could not otherwise get suspension pursuant to statute and therefore needed court-ordered suspension in order to preserve one's entries for liquidation in accordance with the final court decision. And that fact, the fact that an injunction is a supplement to statutory suspension, the fact that continued suspension is a substitute for an injunction and also a supplement to statutory suspension, I think makes very clear that a suspension is a suspension is a suspension, and any suspension of liquidation preserves entries for liquidation in accordance with the final court decision. Thank you. Ms. Davidson, is it correct then that after the NAFTA decision that the added dumping deposits were no longer required for all subsequent importations? That's correct. If they're no longer required for subsequent importations, what theory is the government entitled to keep the ones that were made before? That's what I don't understand. It seems to me like a somewhat bizarre result, and therefore one that shouldn't be reached unless there was clear unequivocal indication that that's what Congress intended. There is clear and unequivocal. You say there is clear. Yes. For one thing, the NAFTA Implementation Act only allows for the suspension of liquidation in two circumstances that the plaintiffs admit are not relevant here. Unlike the plaintiffs in the Tembeck case, which is only a CIT decision, and there was a settlement, so it couldn't be appealed. But in that case, at least there was a suspension of liquidation under C, subsection C. The parties had requested a review and then gone to a panel. But here, they didn't even do that. They requested a review and then stayed it before Commerce. So they have not obtained a suspension of liquidation under either the NAFTA panel procedures that would allow suspension of liquidation and thereby liquidation in accordance with a panel decision or with the court. And it's really, it's completely wrong to say that a suspension is a suspension is a suspension. If you look at Section 1516AE, which is the provision in the Court of International Trade that allows for liquidation of entries in accordance with a final court decision, it specifically says only entries that were suspended pursuant to Section 1516AC2, which is the CIT's form of injunctive relief in this type of case. So entries that are suspended for some other reason, just a preliminary injunction under Rule 65, which was the case here, this is not a 1516AC2 injunction. And in fact, in implementing legislation, Congress expressly said that Section 1516AC2 cannot be used to suspend liquidation of entries that are the subject of a NAFTA panel proceeding. So Congress, whether you think it makes sense or not, Congress knew what it was doing and it was completely clear. And this is not unusual in areas where there's concurrent jurisdiction, that the rights and remedies and procedures of each are completely different. This would be like a government contractor going to GAO with a bid protest, getting an opinion that's pleasurable to it, and then coming to the Court of Federal Claims and seeking just injunctive relief based upon that opinion, because the GAO cannot issue injunctions. You can't lend concurrent systems, especially when Congress has taken such pains as it has here, to keep them entirely separate. Now, in 1988, it was not the case that the law was clear. The law was in flux. However, the government's position was clear, and Congress adopted the government's position that in a challenge just to the order, if you have not sought an administrative review, you could not obtain an injunction. You had to seek an administrative review. And this Court disagreed with that interpretation of Section 1516AC2, which is not the statute at issue here. The Congress has expressly said that can't apply here. This Court disagreed with the government's interpretation, but Congress said, and the executive branch negotiated NAFTA, proposed the implementing legislation, and wrote the statement of administrative action. Congress said, we're going to keep for NAFTA panels, we're going to stay with the government's position that suspension should only be limited to these circumstances, and keep it narrower than the Court of International Trade. Parties can still go to the Court of International Trade if they want that broader relief, but if they want a binational panel without Article III-confirmed judges who are going to issue a decision informally and faster, then they can go to a NAFTA panel. So parties have that choice. I think the references to diamond saw blades, that wasn't cited in the briefs, and I haven't received a Rule 28J letter, so I would just say that that is a case that solely in the Court of International Trade has nothing to do with NAFTA, and therefore the jurisdictional problems with this case and the sovereign immunity problems and the entire Congressional attempt to keep separate systems certainly doesn't apply in that case. I would remind the Court that in Heartland byproducts just last year, this Court said that the normal rule is that entries are liquidated at the rate that is applicable when they come in, and even if that rate is later determined by a court to be incorrect, entries that are not liquidated do not get the benefit of that new rate unless there was some special mechanism that was put into play that allows them to get that benefit, and so in Heartland byproducts where this Court held that the classification and valuation decision by customs was wrong, the pending entries that had not been liquidated still were liquidated at their entered rate, and this Court said if Congress wants to change that it can, but there's no special provision to do otherwise, and in this case, Congress has provided distinct ways to obtain suspension and to thereby obtain liquidation in accordance with a court or a panel decision, but those circumstances admittedly don't apply here, so the mere fact that the order has been vacated prospectively does not mean that there's any authority. In fact, the authority is to the opposite. The statute says, which we've blocked and quoted in our brief, and it's identical to Heartland, it says entries are liquidated at the rate at which they are entered unless there's some other statutory provision, and there isn't one here, and the plaintiffs haven't cited to one. Okay, thank you, Ms. Davidson. I'm pleased to speak on the case that's taken.